FILED ___ RECEIVED
ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

JAN 2 3 2015

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUT

Lori Esquivel f/k/aLori Herda and Joseph Esquivel, Jr.
*Plaintiff in proper person*
12345 Lamplight Village Ave, #316
Austin, Texas 78758
512-769-3721

# UNITED STATES DISTRICT COURT

## CLARK COUNTY NEVADA

LORI ESQUIVEL F/K/A LORI HERDA,
JOSEPH ESQUIVEL, JR,*PRO SE,*

Plaintiff,

vs.

COUNTRYWIDE HOME LOANS, INC.,
MORTGAGE ELECTRONIC
REGISTRATION SERVICES, INC., CTC
REAL ESTATE SERVICES, GREEN TREE
SERVICING, BAC HOME LOANS,
SERVICING, LP, (F/K/A COUNTRYWIDE
HOME LOANS SERVICING, LP),BANK OF
AMERICA, N.A.(BOA) FEDERAL
NATIONAL MORTGAGE ASSOCIATION
(FANNIE MAE), MTC FINANCIAL INC.,
(D/B/A/ TRUSTEE CORPS.) AND DOES I-X,

Defendants

2:15-cv-00135-JCM-NJK

COMPLAINT FOR

1. VIOLATIONS OF THE FAIR DEBT
   COLLECTION PRACTICES ACT 15
   U.S.C. §1692
2. BREACH OF CONTRACT
3. SLANDER OF TITLE;
4. FRAUD

COME NOW PLAINTIF LORI ESQUIVEL F/K/A LORI HERDA and JOSEPH ESQUIVEL, JR, *Pro se* and initiates this Complaint against Defendants based on information and beliefs herein.

## **PARTIES**

1. Plaintiff LORI ESQUIVEL F/K/A LORI HERDA owns property located at 6940 Surrey Court, Las Vegas, NV 89145 ("Property").

2. Plaintiff is a consumer as defined under the FDCPA at 15 U.S.C. §1692a(3), and a person with standing to bring a claim under the FDCPA, FCRA and the Nevada Revised statutes, by virtue of being directly affected by the violations of the Acts, to wit, Plaintiff received collection letters and account statements from Bank of America N.A., and received Notices from MTC Financial Inc., regarding foreclosure of her property, after Plaintiff had discharged the obligation for the alleged debt, and Defendant Bank of America N.A., was properly notified and aware of the same

3. Defendant Countrywide Home Loans, Inc. (Countrywide) is a New York corporation doing business in the State of Nevada. Countrywide Home Loans, Inc.'s Resident Agent is The Corporation Trust Company of Nevada, 311 S. Division St., Carson City, NV 89703.

4. Defendant Bank of America (BOA) is a corporation incorporated under the laws of the State of Delaware and doing business in the State of Nevada. Bank of America's Registered Agent in Nevada is Corporate Services Corporation, 2360 Corporate Circle, Henderson, NV 89074.

5. Plaintiff is informed and believes, and thereon alleges that Defendant BOA regularly collects or attempts to collect consumer debts owed or due or asserted to be owed or due another and that Defendant is a "debt collector" as defined by 15 U.S.C. §1692a(6)

6. Defendant Mortgage Electronic Registration Services, Inc. (MERS) is a Delaware corporation doing business in the State of Nevada. MERS is not registered in the State of Nevada. MERS' Registered Agent in Delaware is The Prentice-Hall Corporation System, Inc., 2711 Centerville Road, Ste. 400, Wilmington, DE 19808.

7. Defendant CTC Real Estate Services (CTC) is a California corporation doing business in the State of Nevada. CTC's Resident Agent is The Corporation Trust Company of Nevada, 311 S. Division St., Carson City, NV 89703.

8. Defendant Green Tree Servicing, LLC (Greentree) is a Delaware limited liability company doing business in the State of Nevada. Greentree's Resident Agent is The Corporation Trust Company of Nevada, 311 S. Division St., Carson City, NV 89703.

9. Plaintiff is informed and believes, and thereon alleges that Defendant Greentree regularly collects or attempts to collect consumer debts owed or due or asserted to be owed or due another and that Defendant is a "debt collector" as defined by 15 U.S.C. §1692a(6).

10. Defendant BAC Home Loans Servicing, LP (BAC) is a Texas limited partnership formerly doing business in the State of Nevada. BAC business license with the State of Nevada Secretary of State expired on January 31, 2012. BAC Resident Agent is The Corporation Trust Company of Nevada, 311 S. Division St., Carson City, NV 89703.

11. Defendant MTC Financial, Inc. (MTC) is a California corporation doing business in the State of Nevada. MTC's Registered Agent is GKL Registered Agents/Filings, Inc., 1000 East William Street, Ste. 204, Carson City, NV 89701.

12. Defendant Federal National Mortgage Association (Fannie Mae) is a government sponsored enterprise and is not currently registered in the State of Nevada. The Registered Agent for Fannie Mae is Federal National Mortgage Association, Attn: Legal Department, International Plaza II, 14221 Dallas Parkway, Suite 1000, Dallas, TX 75254-2916.

## **JURISDICTION**

13. Jurisdiction of this Court arises pursuant to the FDCPA 15 USC §1692k (d), 28 U.S.C. §1332 and the doctrine of supplemental jurisdiction and N.R.S 43.110.

14. This court has jurisdiction because the Defendants violated the FDCPA §1692 *et seq.*, the FCRA §1681b, NRS §649 because the defendant reached into Clark County availing itself of the protection of the laws of Clark County Nevada and the defendants acts in this County gave rise to the causes of action asserted herein

15. This court has jurisdiction because Defendants conduct business in the State of Nevada and committed the acts that form the basis for this suit, to wit, by continuously attempting to collect a non-existent defaulted debt from Plaintiff, with the intent to cause effects in the County of Clark, State of Nevada, this Court has personal jurisdiction over the Defendants for purposes of this action

## **INTRODUCTION**

16. This is an action for damages and injunctive relief brought by Plaintiff against Defendants for violations of the Fair Debt Collection Practices Act 15 U.S.C. §1692 *et seq.;* (hereinafter "FDCPA"), for violations of the Fair Credit Reporting Act 15 USC §1681b, Breach of Contract, Fraud, Violations of Title 11 U.S.C §524(A) (2)and NRS 649 *et seq.* Slander of Title

17. This action involves an alleged "defaulted debt," as the action involves an alleged obligation of a consumer to pay money arising out of a transaction in which the property that is the subject of the transaction was primarily for personal, family, and/or household purposes §1692a(5).

18. Plaintiff contends that the Collection Company Defendants have violated such laws by repeatedly harassing Plaintiff in attempts to collect a non-existent debt that is not in default.

## SUMMARY OF THE CASE

19. Defendants BOA, Greentree, MTC and Fannie Mae are attempting to collect a debt discharged in bankruptcy through the exercise of alternate means to collect the discharged obligation value by filing fraudulent documents including but not limited to a "Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust".

20. On or about May 3, 2005 Plaintiff executed a Note from Countrywide for $205,000.00 (Two Hundred Five Thousand Dollars) a copy of this Note was entered by BOA, into the court record in Bankruptcy Court Case No. 09-29326-bam. Such Note evidenced an underlying obligation which was discharged rendering the Note of zero sum value (Exhibit A).

21. On or about May 3, 2005 Plaintiff executed a Deed of Trust in favor of Countrywide to secure the May 3, 2005 Note as an alternate means to secure value for the Note, copy of this Deed of Trust was entered by BOA, into the court record in Bankruptcy Court Case No. 09-29326-bam (Exhibit B).

22. That Deed of Trust states in paragraph 23: "Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it."

23. On or about June 1, 2005 Countrywide, sold the interest of the Herda Mortgage Loan to Fannie Mae who then sold the Intangible Payment Obligation to Fannie Mae REMIC Trust 2005-6 (Exhibit C).

24. The Affidavit of Joseph Esquivel Jr. dated January 19, 2015 states that Plaintiff's obligation had been sold by Countrywide Home Loans,Inc., into the Fannie Mae REMIC Trust 2007-67 Trust shortly after the Plaintiff's loan instruments evidencing the Plaintiff's obligation was executed. A true copy of the Affidavit of Joseph Esquivel Jr. is attached to this Complaint as (Exhibit D).

25. On September 14, 2009 Defendants MERS and BAC improperly filed in the Official Records of the Clark County Recorder's Office as instrument# 200909140003882 a document purporting to be a "Corporation Assignment of Deed of Trust Nevada" dated September 02, 2009, where MERS, improperly attempted to grant, assign, and transfer to BAC a Deed of Trust dated May 3, 2005 (Exhibit E). Only the Deed of Trust is listed as sold, not the note. Therefore, the Deed of Trust and Note have been separated.

26. Under common law such transfer of assignment to a non-party is a nullity, the instrument(s) consisting of the Deed of Trust did not comply with all applicable statutory law.

27. On September 14, 2009 Defendants MERS and BAC improperly filed in the Official Records of the Clark County Recorder's Office as instrument # 2009099140003883 a document purporting to be a "Substitution of Trustee Nevada", dated September 08, 2009, where BAC, improperly attempted to remove CTC Real Estate Services as Trustee and substitute Recontrust Company, N.A. as Trustee to a Deed of Trust dated May 3, 2005. (Exhibit F).

28. Recontrust is a subsidiary of Bank of America, NA. Recontrust's registration with the Nevada Secretary of State was dissolved by merger on or about July 30, 2007.

29. On October 14, 2009 Plaintiff Lori Herda filed for chapter 7 bankruptcy listing the debt as being an obligation purportedly secured by a Deed of Trust dated May 3, 2005 as a dischargable debt. (Exhibit G)

30. On September 27, 2010 Judge Bruce Markell of the Bankruptcy Court declared the obligation debt purportedly alternately secured by Deed of Trust dated May 3, 2005 to be a discharged debt. (Exhibit H). The plaintiff's credit report shows that the debt has been discharged and that there is a zero balance for this obligation. (See Exhibit I attached within)

31. On October 15, 2010 after the debt purportedly secured by the Deed of Trust as an alternate obligation of value dated May 3, 2005 had been discharged and acting in defiance of a Federal Court Injunction, Defendants MERS and BAC improperly filed in the Official Records of the Clark County Recorder's Office as ins # 101015001860 a document purporting to be an "Assignment of Deed of Trust" (an alternate means of value) dated June 15, 2010, where MERS, improperly attempted to grant, assign, and transfer to BAC an unenforceable Deed of Trust dated May 3, 2005 (Exhibit J).

32. On January 13, 2012 after the obligation debt purportedly secured by the Deed of Trust dated May 3, 2005 had been discharged and acting in defiance of a Federal Court Injunction, Defendants MERS, BOA and BAC improperly filed in the Official Records of the Clark County Recorder's Office as ins # 120113002616 a document purporting to be an "Assignment of Deed of Trust" dated January 11, 2012, where MERS, improperly

attempted to grant, assign, and transfer to Bank of America, N.A., Successor by merger to BAC the unenforceable Deed of Trust dated May 3, 2005 (Exhibit K.

33. On May 24, 2013 after the debt purportedly secured by the Deed of Trust dated May 3, 2005 had been discharged and acting in defiance of a Federal Court Injunction, Defendants BOA and Greentree improperly filed in the Official Records of the Clark County Recorder's Office as ins # 130524005502 a document purporting to be an "Assignment of Deed of Trust" dated May 16, 2013, where BOA, improperly attempted to grant, assign, and transfer to Greentree the expired Deed of Trust dated May 3, 2005 (Exhibit L)

34. On July 7, 2014 after the debt purportedly secured by the Deed of Trust dated May 3, 2005 had been discharged and acting in defiance of a Federal Court Injunction, Defendants MTC falsely stating themselves to be Trustee improperly filed in the Official Records of the Clark County Recorder's Office as ins # 20140707-0000944 a document purporting to be an "Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust" dated May 16, 2013, where MTC, on behalf of Greentree unlawfully attempted to cause sale of real property through the unenforceable Deed of Trust dated May 3, 2005 (Exhibit M).

<u>COUNT I</u>

<u>VIOLATION OF FAIR DEBT COLLECTION</u>

<u>PRACTICES ACT (FDCPA), 15 U.S.C. §1692 et seq., NRS 649. and 15 U.S.C.</u>

<u>§1682 et seq</u>

**BY DEFENDANTS, BANK OF AMERICA, N.A.,  GREENTREE SERVICING**

**AND MTC FINANCIAL INC., (D/B/A TRUSTEE CORPS)**

35. Plaintiff incorporates all preceding paragraphs as fully set forth herein.

36. The violations alleged herein are within the statute of limitations as defined by 15 U.S.C. §1692k(d).

37. Defendant, BOA and Greentree are unknown entities and "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6) attempting to collect a "debt" as defined by 15 U.S.C. §1692(a)(5).

38. Defendant, BOA, Greentree and are unknown entities and are a "debt collection agency" as defined by the NRS 649.020 attempting to collect a "claim" as defined by NRS 649.010.

39. N.R.S. .649 et seq., prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

40. A violation of any provision of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1682 et seq., or any regulation adopted pursuant thereto, shall be deemed to be a violation of this chapter. (Added to NRS by 2007, 2500).

41. 15 U.S.C. § 1692a (emphasis added). The Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee. ("[T]he FDCPA holds `debt collectors liable for various abusive, deceptive, and unfair debt collection practices regardless of whether the debt is valid.'") Greentree acquired the alleged non-existent debt as a debt in default, and its collection activities were based on that understanding. Greentree attempted to collect on a debt that "it asserted to be in default" and because that asserted default was believed by Greentree to have existed when

Greentree acquired the alleged debt from Bank of America, NA, Greentree is not outside the scope of the Act, and is therefore liable under the act as follows;

42. Plaintiff is informed and believes and thereon alleges that, Defendant Greentree has violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person, by repeatedly sending Plaintiff monthly payment statements, with a standard bankruptcy disclaimer to avoid liability under the FDCPA, and by asserting a right which it lacks, to wit, the right to enforce a non-existent debt.

43. Plaintiff is informed and believes and thereon alleges that, the Greentree and BOA's conduct violated 15 U.S.C. §1692e and §1692e (5) in that Defendants engaged in false, deceptive or misleading behavior in connection with the collection of a debt by threatening to take a legal action against Plaintiff, which Defendants could not carry out, to wit, a right which they lack.

44. Plaintiff is informed and believes and thereon alleges that, Greentree and BOA has violated 15 U.S.C. §1692e(2) by falsely representing the character, amount and legal status of the debt they are attempting to collect, by stating that Plaintiff is in Default and owes a debt, When in fact, Plaintiff is not in default, nor does she owe a debt to either Defendant.

45. Plaintiff is informed and believes and thereon alleges that, the Defendant's conduct violated 15 U.S.C. §1692e (9) by Representing documents as authorized, issued or approved by the State of Nevada, in that Defendants MTC FINANCIAL INC., (D/B/A TRUSTEE CORPS) sent Plaintiff a Notice of Default and Election to Sell her home and recorded the same. Plaintiff further contends she is absolutely not in default and does not owe a debt to Greentree or BOA.

46. Plaintiff is informed and believes and thereon alleges that, Defendant's Greentree and BOA has violated 15 U.S.C. §1692f and §1692f(6) in that they used unconscionable means to collect a non-existent debt, by declaring a Default against Plaintiff, when in fact, Plaintiff is not in default, nor does she owe a debt to either Defendant and the actions of Defendants have humiliated and belittled Plaintiff to a point of oppression, in that Defendants have taken illegitimate steps and threatened to unlawfully repossess or disable the Plaintiff's property.

47. Plaintiff is informed and believes and thereon alleges that, the word DEFAULT appearing on MTC' business envelopes is a violation of the FDCPA. Because, any language or symbol on the envelope that indicates the communication concerns debt collection and/or debt collection business is a violation of 15 U.S.C. §1692f(8) and/or §1692b(5). Plaintiff further contends that the word DEFAULT is defamatory and disparaging to plaintiffs personal property and integrity because, DEFAULT refers to a failure to fulfill an obligation which is a debt, and MTC mailed communications were seen by postal employees who sort the mail and the mail carrier that delivers the mail to Plaintiff.

48. MTC' letter/Notice dated 07/13/2014 state in part; "Trustee Corps may be acting as a debt collector attempting to collect a debt". MTC clearly admits it is a debt collector attempting to collect a debt, and therefore, has established liability under the FDCPA by its own admittance.

## COUNT II

## BREACH OF CONTRACT

48.  Plaintiff re-alleges paragraphs 1-47 as if herein stated in full

49. Generally a Deed of Trust can be assigned by one party to another.  However, the Deed

of Trust that Lori Herda signed was a Deed of Trust that cannot be assigned to anyone else

by Silver State.  The reconveyance clause of this Deed of Trust states "Upon payment of all

sums secured by this Security Instrument Lender shall request Trustee to reconvey the

property and shall surrender this security instrument and all notes evidencing debt secured

by this Security Instrument to Trustee.  Trustee shall reconvey the property without

warranty to the person or persons legally entitled to it."

    a.  The "person legally entitled to the property" is Lori Herda.

    b.  The "Security Instrument" is the Deed of Trust.

    c.  The "Lender" is Countrywide Home Loans, Inc..

    d.  The "Trustee" is CTC Real Estate Services.

    e.  "All sums secured by this Deed of Trust" is represented by all beneficial interest

of the Deed of Trust.

    f.  "Payment" is unrestricted as to:

    1)  the source of payment,

    2)  the recipient of payment and

    3)  the means or methods of payment

    g.  "Upon" means at the time of occurrence

    7.  The document purporting to be a "Corporation Assignment of Deed of Trust"

assigns all beneficial interest in the Deed of Trust dated May 25, 2005 to BAC HOME

LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP for

value received.

50.     So, because all beneficial interest in a Deed of Trust has been assigned to BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP under payment of value, then payment of all sums secured by this Deed of Trust has occurred and Countrywide Home Loans, Inc. was required by the terms of this Deed of Trust to immediately surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to CTC Real Estate Services and CTC Real Estate Services was required by the terms of this Deed of Trust to immediately reconvey the property without warranty to Lori Herda.

51.     Because it is required under contract that this Deed of Trust and Note were surrendered by Countrywide Home Loans, Inc. to CTC Real Estate Services, any exercise of this Deed of Trust by MTC FINANCIAL INC., (D/B/A/ TRUSTEE CORPS is a breach of contract and ultra vires.  Where MTC FINANCIAL INC., (D/B/A/ TRUSTEE CORPS appears to attempt to show a right to enforce this Note and/or Deed of Trust, that right is not available to MTC FINANCIAL INC., (D/B/A/ TRUSTEE CORPS through the terms of this Deed of Trust.

52.     Unless Countrywide Home Loans, Inc. surrendered the Note and the Deed of Trust to CTC Real Estate Services, Countrywide Home Loans, Inc. is in breach of contract. Because the property has not been reconveyed to Lori Herda, CTC Real Estate Services is in breach of contract

## COUNT III

## SLANDER OF TITLE

53. Plaintiff re-alleges paragraphs 1-52 as if herein stated in full.

54. Generally, one must prove the following to bring a legally sufficient claim of Slander of Title.

    a.   There was a communication to a third party of;

    b.   A false statement;

    c.   Derogatory to another's title;

    d.   With malice; and

    e.   Causing special damages

55. The September 14, 2009 filing of the document purporting to be a "Corporation Assignment of Deed of Trust Nevada" dated September 02, 2009 into the Official Records of the Clark County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiffs claim of title. To wit;

    a.   Filing the document purporting to be a "Corporation Assignment of Deed of Trust Nevada" is by definition a statement to a third-party;

    b.   **The statement that MERS could assign "the Note or Notes herein described or referred to" is a false statement because of the following**:

        i.   MERS never owned the Plaintiff's Note;

        ii.   MERS cannot own a Note because MERS is strictly a registry database;

        iii.   MERS has emphatically stated under its own agreement with its mortgage-lender members, that MERS *"cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents"* and that MERS has *"no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans."* Source: *Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Bnkng and Fin.,* 704 N.W.2d 784 (Neb. 2005), Brief of Appellant at 11-12.

        iv.   It is stated in the MERS Procedures Manual, Release 19.0, dated June 14, 2010: (Exhibit L) Page 63 – Transfer of Beneficial Rights to Member Investors, Overview:

*"Although MERS tracks changes in ownership of the beneficial rights for loans registered on the MERS System, MERS cannot transfer the beneficial rights to the debt. The debt can only be transferred by properly endorsing the promissory note to the transferee."*

v.     It is stated in the MERS Residential Marketing Kit, *Terms And Conditions*: *"MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.  MERS agrees not to assert any rights... the MERS System is not a vehicle for creating or transferring beneficial interests in mortgage loans..."*

vi.     Pursuant to the maxim of law *Nemo dat quod non habet*, one cannot sell what one does not own;

vii.     Pursuant to statutory requirements of law, negotiable instruments are to be transferred by negotiation, indorsement, and delivery, and an Assignment cannot memorialize a sale that never took place; NRS § 104.7501. *Form of negotiation and requirements of due negotiation*

*1. The following rules apply to a negotiable tangible document of title:*

*(a) If the document's original terms run to the order of a named person, the document is negotiated by the named person's endorsement and delivery... (emphasis added*

c.     That false statement that MERS could assign "the Note or Notes herein described or referred to" is derogatory to Plaintiff's title; All parties had knowledge the obligation debt had been discharged and willfully elected to violate the discharge injunction, such is with intent.

d.     That false statement was made with malice to improperly attempt an assignment that was not eligible to be recorded; All parties had knowledge the obligation debt had been discharged and willfully elected to violate the discharge injunction, such is with intent.

e.     The filing of the document purporting to be a "Corporation Assignment of Deed of Trust Nevada" with its false statement caused Plaintiffs and continues to cause Plaintiffs financial, emotional, and special damages as all parties had knowledge the obligation debt had been discharged and willfully elected to violate the discharge injunction, such is with intent.

56. The September 14, 2009 filing of the document purporting to be a "Substitution of Trustee Nevada", dated September 05, 2009 into the Official Records of the Clark County Recorder's Office is a communication to a third party of false statement

derogatory to Plaintiff's title made with malice causing special damages to the Plaintiffs claim of title. To wit;

    a.   Filing the document purporting to be a "Substitution of Trustee Nevada" is by definition a statement to a third party

    b.   The statement that BAC "is the present beneficiary under said the Deed of Trust" is a false statement;

    c.   that false statement is derogatory to Plaintiff's title;

    d.   That false statement was done with malice to improperly attempt an assignment

    e.   The filing the document purporting to be a "Substitution of Trustee Nevada" with its false statement caused Plaintiffs, and continues to cause Plaintiffs financial, emotional and special damages harm.

57. The October 15, 2010 filing of the document dated June 15, 2010 and the January 13, 2012 filing of the document dated January 11, 2012, purporting to be a "Assignment of Deed of Trust" into the Official Records of the Clark County Recorder's Office are communications to a third party of false statements that are derogatory to Plaintiff's title made with malice causing special damages to the Plaintiffs claim of title. To wit;

    a.   Filing the documents purporting to be a "Corporation Assignment of Deed of Trust Nevada" are by definition statements to a third-party;

    b.   **The statement that MERS could assign "the Note or Notes herein described or referred to" is a false statement because of the following:**

        i.   MERS never owned the Plaintiff's Note;

        ii.   MERS cannot own a Note because MERS is strictly a registry database;

iii.    MERS has emphatically stated under its own agreement with its mortgage-lender members, that MERS *"cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents"* and that MERS has *"no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans."* Source: *Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Bnkng and Fin.,* 704 N.W.2d 784 (Neb. 2005), Brief of Appellant at 11-12.

iv.    It is stated in the MERS Procedures Manual, Release 19.0, dated June 14, 2010: Page 63 – Transfer of Beneficial Rights to Member Investors, Overview: *"Although MERS tracks changes in ownership of the beneficial rights for loans registered on the MERS System, MERS cannot transfer the beneficial rights to the debt. The debt can only be transferred by properly endorsing the promissory note to the transferee."*

v.    It is stated in the MERS Residential Marketing Kit, *Terms And Conditions*: "*MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights... the MERS System is not a vehicle for creating or transferring beneficial interests in mortgage loans...*"

vi.    Pursuant to the maxim of law *Nemo dat quod non habet*, one cannot sell what one does not own;

vii.    Pursuant to statutory requirements of law, negotiable instruments are to be transferred by negotiation, indorsement, and delivery, and an Assignment cannot memorialize a sale that never took place;

c.    That false statement that MERS could assign "the Note or Notes herein described or referred to" is derogatory to Plaintiff's title; all parties had knowledge the obligation debt had been discharged and willfully elected to violate the discharge injunction, such is with intent.

d.    That false statement was made with malice to improperly attempt an assignment that was ineligible for recordation; all parties had knowledge the obligation debt had been discharged and willfully elected to violate the discharge injunction, such is with intent.

  e. The filing of the document purporting to be a "Corporation Assignment of Deed of Trust Nevada" with its false statement caused Plaintiff and continues to cause Plaintiffs financial, emotional, and special damages.

58. The May 24, 2013 filing of the document purporting to be a "Assignment of Deed of Trust" dated May 16, 2013 into the Official Records of the Clark County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiffs claim of title. To wit;

  a. Filing the document purporting to be a "Assignment of Deed of Trust" dated May 16, 2013 is by definition a statement to a third party

  b. The statement that BOA could assign "the Note or Notes and obligations herein described or referred to" is a false statement because of the following;

    i. Pursuant to the maxim of law Nemo dat quod non habet, one cannot sell what one does not own;

    ii. BOA is not the owner of the Note nor the obligation.

    ii. Pursuant to statutory requirements of law, negotiable instruments are to be transferred by negotiation, indorsement, and delivery, and an Assignment cannot memorialize a sale that never took place;

  c. that false statement is derogatory to Plaintiff's title;

  d. that false statement was done with malice to improperly attempt an assignment

  e. the filing the document purporting to be a "Assignment of Deed of Trust" dated May 3, 2005 with its false statement caused Plaintiffs, and continues to cause Plaintiffs financial, emotional and special damages

59. The July 7, 2014 filing of the document purporting to be a "Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust" May 16, 2013into

the Official Records of the Clark County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiffs claim of title. To wit;

    a.  Filing the document purporting to be a "Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust" dated May 16, 2013 is by definition a statement to a third party

    b.  The statement that "a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the Trustor has failed to perform obligations pursuant to or under the Note and/or Deed of Trust" is a false statement

    c.  that false statement is derogatory to Plaintiff's title;

    d.  that false statement was done with malice to improperly attempt an assignment

    e.  the filing the document purporting to be a "Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust" dated May 16, 2013 with its false statement caused Plaintiffs, and continues to cause Plaintiff's financial, emotional and special damages

## COUNT IV

## FRAUD

60. Plaintiffs re-allege paragraphs 1-59 as if stated herein in full.

61. There are generally five elements of Fraud;

    a.  A false statement of a material fact,

    b.  Knowledge on the part of the defendant that the statement is untrue,

   c.  Intent on the part of the defendant to deceive the alleged victim,

   d.  Justifiable reliance by the alleged victim on the statement, and

   e.  Injury to the alleged victim as a result

62. The September 14, 2009 filing of the document purporting to be a "Corporation Assignment of Deed of Trust Nevada" dated September 02, 2009 into the Official Records of the Clark County Recorder's Office is a communication to a third-party of a false statement of a material fact knowingly intended to deceive the Plaintiffs and the public County Record and to injure the Plaintiff's claim of title. To wit;

   a.  The statement in the County Record in the document purporting to be a "Corporation Assignment of Deed of Trust Nevada" dated September 02, 2009 that MERS could assign "the Note or Notes herein described or referred to" is a false statement of material fact.

   b.  MERS knew or should have known it could not assign the Note pursuant to statutory requirements of law; MERS was never the owner of the Note.

   c.  MERS intended to deceive in the public record that it could assign the Note

   d.  The Plaintiff s rely upon the County Record to know other claims of title

   e.  As a result of the MERS false statement Plaintiff claim to title is devalued.

63. The September 14, 2009 filing of the document purporting to be a "Substitution of Trustee Nevada", dated September 05, 2009 into the Official Records of the Clark County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing Injury to the Plaintiffs claim of title. To wit;

a. The statement in the County Record in the document purporting to be a "Substitution of Trustee Nevada" dated September 02, 2009 that BAC "is the present beneficiary under said the Deed of Trust" is a false statement of a material fact.

b. BAC knew or should have known it was not the present beneficiary under said the Deed of Trust. BAC was servicer and acting in violation of 15 USC Chapter 41 § 1641(f)

c. BAC intended to deceive in the public record that it was the proper beneficiary under said the Deed of Trust.

d. The Plaintiffs rely upon the County Record to know other claims of title

e. As a result of the BAC false statement an improper party is being substituted and Plaintiff's claim to title is devalued.

64. The October 15, 2010 filing of the document purporting to be a "Assignment of Deed of Trust" dated June 15, 2010 into the Official Records of the Clark County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing injury to the Plaintiffs claim of title. To wit;

a. The statement in the County Record in the document purporting to be an Assignment of Deed of Trust" dated June 15, 2010 that MERS could assign "the Note or Notes herein described or referred to" is a false statement of a material fact.

b. MERS knew or should have known it could not assign the Note pursuant to statutory requirements of law; MERS was never the owner of the Note.

c. MERS intended to deceive in the public record that it could assign the Note

d.  The Plaintiffs reliy upon the County Record to know other claims of title

e.  As a result of the MERS false statement Plaintiffs claim to title is devalued

65. The January 13, 2012 filing of the document purporting to be a "Assignment of Deed of Trust" dated January 11, 2012 into the Official Records of the Clark County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing injury to the Plaintiffs claim of title. To wit;

a.  The statement in the County Record in the document purporting to be a "Assignment of Deed of Trust" dated January 11, 2012 that MERS could assign "the Note or Notes herein described or referred to" is a false statement.

b.  MERS knew or should have known it could not assign the Note.

c.  MERS intended to deceive in the public record that it could assign the Note

d.  The Plaintiff relies upon the County Record to know other claims of title

e.  As a result of the MERS false statement Plaintiff claim to title is devalued

66. The May 24, 2013 filing of the document purporting to be a "Assignment of Deed of Trust" dated May 16, 2013 into the Official Records of the Clark County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing injury to the Plaintiffs claim of title. To wit;

a.  The statement in the County Record in the document purporting to be a "Assignment of Deed of Trust" dated May 16, 2013 that MERS could assign "the Note or Notes herein described or referred to" is a false statement.

b.  BOA knew or should have known it could not assign the Note pursuant to statutory requirements of law. Bank of America was never the owner of the Note or the debt.

c. BOA intended to deceive in the public record that it could assign the Note along with a discharged obligation and has violated 15 USC Chapter 41 § 1641(f) as well.

> *15 USC Chapter 41 § 1641(f) Treatment of servicer*
>
> *(1) In general*
>
> *A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.*
>
> *(2)Servicer not treated as owner*
>
> *on basis of assignment for administrative convenience*
>
> *A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.*

d. The Plaintiffs rely upon the County Record to know other claims of title.

e. As a result of MERS' false statement, Plaintiff is injured because Plaintiff's claim to title is devalued.

67. The July 7, 2014 filing of the document purporting to be a "Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust" May 16, 2013into the Official Records of the Clark County Recorder's Office is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing injury to the Plaintiffs claim of title. To wit;

a. The statement in the County Record in the document purporting to be a "Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust" dated May 16, 2013 that "a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the Trustor has failed to perform obligations pursuant to or under the Note and/or Deed of Trust" is a false statement.

b. MTC knew or should have known that there was no debt.

c. MTC intended to deceive in the public record that the Deed of Trust could be exercised to satisfy a debt that did not exist.

d. The Plaintiffs rely upon the County Record to know other claims of title

e. As a result of the MTC false statement Plaintiffs claim to title are devalued

## RESERVATION OF RIGHTS

68. Plaintiffs hereby reserve the right to amend their Complaint to include additional defendants as their identities are discovered and to include additional causes of action as additional information is discovered.

## PRAYER FOR RELIEF

69. WHEREFORE, Plaintiffs Lori Herda and Joseph Esquivel, JR, Pro se respectfully request this court grant the following:

70. Judgment for damages against Defendants, NSM and NDSC, for actual or statutory damages, any punitive damages, costs incurred and attorney fees if applicable, pursuant to 15 U.S.C. §1692k

71. Order the Property be reconveyed to Lori Herda as per the terms of the Deed of Trust;

72. Order that the Note and Deed of Trust be surrendered to the proper Trustee per the terms of the Deed of Trust.

73. Declare that Deed of Trust dated May 3, 2005 as unenforceable to satify the Debt evdenced by the Note as that Debt no longer exists by discharge of same;

74. Declare that none of the named Defendants can make a lawful claim to the Herda Tangible Deed of Trust;

75. Declare that Plaintiff Lori Herda is the owner of the Property with rights to possession.;

76. Declare that the Corporation Assignments of Deed of Trust dated September 2, 2009 is void;

77. Declare that the Substitution of Trustee dated September 8, 2009 is void;

78. Declare that the June 15, 2010, January 11, 2012 and May 16, 2013 Assignment of Deed of Trust are void;

79. Declare that the Notice of Default dated July 3, 2014 is void; and

80. For any other relief this Court may find Just and equitable.

## **JURY DEMAND**

81. Plaintiff demands a jury trial for all causes of action set forth herein.

DATED this 21 of January, 2015.

By: *Lori Esquivel fka Lori Herda*

Lori Esquivel f/k/a Lori Herda, *in proper person*

By: *Joseph Esquivel*

Joseph Esquivel Jr., *in proper person*

Exhibit A: Note
Exhibit B: Deed of Trust
Exhibit C: Fannie Mae look-up
Exhibit D: Affidavit of Joseph Esquivel
Exhibit E: Assignment of Deed of Trust
Exhibit F: Substitution of Trustee
Exhibit G: Chapter 7 Bankruptcy Filing
Exhibit H: Discharge of Debt
Exhibit I: Assignment of Deed of Trust
Exhibit J: Assignment of Deed of Trust
Exhibit K: Assignment of Deed of Trust
Exhibit L: Notice of Breach
Exhibit M: MERS Procedures Manual, Release 19.0, dated June 14, 2010

## **VERIFICATION**

We, Lori Esquivel f/k/a  Lori Herda and Joseph Esquivel, JR,  Pro se are the Plaintiffs  in the above-entitled matter.  We have read the foregoing Complaint and know the contents thereof. The same is true of our knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, we believe them to be true.

We declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Executed at ___Austin___ , Texas this 21 day of January, 2015.

By: _____
Lori Esquivel f/k/a Lori Herda, *Plaintiff in proper person*

By: _____

JOSEPH ESQUIVEL, JR,  *Plaintiff in proper person*

Respectfully submitted and affirmed to this 21 day of January, 2015.

By: _____
Lori Esquivel f/k/a Lori Herda, *Plaintiff in proper person*

By: _____
Joseph Esquivel Jr. *Plaintiff in proper person*

EXHIBIT "A"

Case 2:15-cv-00135-JCM-NJK   Document 1   Filed 01/23/15   Page 29 of 87
Case 09-29326-bam   Doc 72-1   Entered 10/29/10 07:22:02   Page 41 of 42
Case 09-29326-bam   Doc 68   Entered 10/19/10 17:55:38   Page 35 of 43

Prepared by: JANELL HAAS

LOAN #: 97135374

# NOTE

MAY 03, 2005                     LAS VEGAS                     NEVADA
[Date]                             [City]                        [State]

6940 SURREY COURT, LAS VEGAS, NV 89145
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 205,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   6.375 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the  FIRST            day of each month beginning on
JULY 01, 2005        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  JUNE 01, 2035          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 1,278.93        .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 3
Initials: _____

-6N (20597).01    CHL (03/04)(d)    VMP Mortgage Solutions, Inc. (800)521-7291
Form 3200 1/01




LOAN #: 97135374

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY:

David A. Spector
Managing Director

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Lori Honda_ _____ (Seal)            _____ (Seal)
LORI HONDA                    -Borrower            -Borrower

_____ (Seal)            _____ (Seal)
                    -Borrower            -Borrower

*[Sign Original Only]*

EXHIBIT "B"

20050525-0003792

Assessor's Parcel Number:
13834610006
After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
JANELL HAAS
Recording Requested By:
K. POCHY

COUNTRYWIDE HOME LOANS, INC.

650 WHITE DRIVE, STE 280
LAS VEGAS
NV 89119

Fee: $29.00
N/C Fee: $0.00

05/25/2005          14:16:26
T20050097576
Requestor:
  FIDELITY NATIONAL TITLE
Frances Deane          SUO
Clark County Recorder   Pgs: 16

181703-LD

─────────[Space Above This Line For Recording Data]─────────

0518181703                    0009713537405005
[Escrow/Closing #]            [Doc ID #]

# DEED OF TRUST

MIN 1000157-0005020090-2

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.
(A) "Security Instrument" means this document, which is dated   MAY 03, 2005                  ,
together with all Riders to this document.

NEVADA-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

                          Page 1 of 16                    Initials:
-6A(NV) (0307) CHL (07/03)(d)
                    VMP Mortgage Solutions - (800)521-7291        Form 3029  1/01



DOC ID #: 0009713537405005

**(B) "Borrower"** is
LORI HERDA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.

Lender is a
CORPORATION

organized and existing under the laws of  NEW YORK                        . Lender's address is
P.O. Box 10219
Van Nuys, CA 91410-0219
**(D) "Trustee"** is
CTC REAL ESTATE SERVICES

400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 , ,

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated  MAY 03, 2005
The Note states that Borrower owes Lender
TWO HUNDRED FIVE THOUSAND and 00/100

Dollars (U.S. $ 205,000.00          ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than   JUNE 01, 2035             .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider             ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                  ☐ Biweekly Payment Rider          ☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

Initials: _X·ll_

DOC ID #: 000971353740 5005

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

DOC ID #: 0009713537405005

irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                                                          of

[Type of Recording Jurisdiction]

CLARK                                                          :

[Name of Recording Jurisdiction]

LOT 6 IN BLOCK 12 OF CHARLESTON RAINBOW UNIT 7B, AS SHOWN BY
MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE 51 IN THE
OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.
ASSESSOR'S PARCEL NO: 138-34-610-006

which currently has the address of
6940 SURREY COURT, LAS VEGAS

[Street/City]

Nevada      89145      ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: _____

⬢ -6A(NV) (0307)   CHL (07/03)       Page 4 of 16       Form 3029   1/01

DOC ID #: 0009713537405005

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums

Initials: _X·H_

DOC ID #: 000971353740500S

any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or

Initials: _____

DOC ID #: 0009713537405005

defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be

DOC ID #: 0009713537405005

paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

Initials: _____

DOC ID #: 000971353740505

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive

Initials: _____

DOC ID #: 0009713537405005

from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Initials: _KH_

DOC ID #: 0009713537405005

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Initials: _____

-6A(NV) (0307)   CHL (07/03)          Page 11 of 16                    Form 3029 1/01

DOC ID #: 0009713537405005

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees,

Initials: _I Ty_

DOC ID #: 0009713537405005

property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Initials: _____

DOC ID #: 000971353740

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $    300.00

Initials: _____

DOC ID #: 0009713537405005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ *Lori Herda* _____ (Seal)
LORI HERDA                                        -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower

DOC ID #: 0009713537405005

STATE OF NEVADA
COUNTY OF _Clark_

This instrument was acknowledged before me on _MAY 13, 2005_ _____ by

_Lori HERDA_



MORRIS W. ROSE
NOTARY PUBLIC
STATE OF NEVADA
DATE APPOINTMENT EXP: 04-23-2009
CERTIFICATE NO: 01-00523-1

_Morris W. Rose_

Mail Tax Statements To:
TAX DEPARTMENT SV3-24

450 American Street
Simi Valley CA, 93065

Initials: _____

**-6A(NV) (0307)**      **CHL (07/03)**      Page 16 of 16      **Form 3029 1/01**

EXHIBIT "C"

11/4/12                                    Fannie Mae Loan Lookup : Fannie Mae

 **Know**Your**Options**.COM
*by Fannie Mae*

| Rent | Buy | Refinance | Modify | Avoid Foreclosure | Find Resources |

Home

## Fannie Mae Loan Lookup Results: Match Found

It appears that Fannie Mae owns your loan, based on the information you entered:

LORI HERDA
6940 SURREY CT
LAS VEGAS, NV 89145
Last 4 Digits of Social Security Number: ****
Fannie Mae Loan Acquisition Date: **06-01-2005**
Mortgage Company: **BANK OF AMERICA, N.A.**

### FORECLOSURE CONSEQUENCES

What can happen if you are foreclosed on? Find out here so you can be prepared.

GO TO OUR FORECLOSURE PAGE

### Results—Our Records Indicate:

- Your loan was acquired by Fannie Mae on or before May 31, 2009. Knowing the Fannie Mae Loan Acquisition Date is important because some programs, such as HARP, are available only on loans acquired by Fannie Mae on or before May 31, 2009.
- Your mortgage company is **BANK OF AMERICA, N.A.**.
- You may be eligible for the Home Affordable Refinance Program (HARP) or for the Home Affordable Modification Program (HAMP)—or other programs available exclusively for Fannie Mae borrowers.

### Next Steps:

To help you find the option(s) that might be best for your situation, please answer the questions below:

*Have you been delinquent on your mortgage in the past 12 months?:*    ○ Yes ○ No

**Note: In this case, "delinquent" means you have paid your mortgage payment late by 30 days or more at any time in the last 6 months. Or, that you had more than one late payment or made a payment more than 30 days late in the 6-month period prior to the last 6 months.**

*Do you anticipate having difficulty paying your mortgage*    ○ Yes ○ No

*in the near future (next 2-3 months)?:*

**Get Options**

### Other Steps You Can Take:

#### Get Help Now

Contact a Fannie Mae Mortgage Help Center for free housing counseling and assistance with your mortgage.

#### Explore KnowYourOptions.com

Review the useful information and tools on this site to learn more about your options.

#### Contact Your Mortgage Company

Confirm these results and obtain additional information regarding your mortgage by contacting your mortgage company.

11/4/12                                    Fannie Mae Loan Lookup : Fannie Mae

FannieMae

© 2012 Fannie Mae

Privacy | Legal | FAQ | Site Map

EXHIBIT "D"

Inst #: 200909140003882
Fees: $14.00
N/C Fee: $0.00
09/14/2009 02:40:19 PM
Receipt #: 55341
Requestor:
FIDELITY NATIONAL DEFAULT S
Recorded By: ADF   Pgs: 1
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
**AND WHEN RECORDED MAIL DOCUMENT TO:**
BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY  SV-35
SIMI VALLEY, CA  93065

138-34-610-006

TS No. 09-0131186
**TITLE ORDER#:  090626360NVGTI**

---

### CORPORATION ASSIGNMENT OF DEED OF TRUST NEVADA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 05/03/2005,
EXECUTED BY:  LORI HERDA, A MARRIED WOMAN AS HER SOLE AND SEPARATE
PROPERTY,TRUSTOR: TO CTC REAL ESTATE SERVICES, TRUSTEE AND RECORDED AS
INSTRUMENT NO. 0003792 ON 05/25/2005, IN BOOK 20050525, OF OFFICIAL RECORDS IN THE
COUNTY RECORDER'S OFFICE OF CLARK  COUNTY, IN THE STATE OF NEVADA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED:   September 02, 2009

State of:  **Texas**
County of:  **Dallas**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC.

BY: _Angela Nava_
, Assistant Secretary
**Angela Nava**
**Assistant Secretary**

On 9-8-09  before me  ANGELA SERATO , personally appeared _____
_____, know to me (or proved to me on the oath of _____ or through
_____) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

Notary Public's Signature

ANGELA SERATO
My Commission Expires
July 27, 2013

EXHIBIT "E"

Inst #: 200909140003883
Fees: $15.00
N/C Fee: $0.00
09/14/2009 02:40:19 PM
Receipt #: 55341
Requestor:
FIDELITY NATIONAL DEFAULT S
Recorded By: ADF   Pgs: 2
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

RECORDING REQUESTED BY:
RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT TO:**
RECONTRUST COMPANY
2380 Performance Dr, TX2-985-07-03
Richardson, TX  75082

**ATTN: Dominic Herne**
TS No. 09-0131186
138-34-610-006
TSG No. 090626360NVGTI

---

## SUBSTITUTION OF TRUSTEE NEVADA

WHEREAS, LORI HERDA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY was the original Trustor, CTC REAL ESTATE SERVICES was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 05/03/2005 recorded on 05/25/2005 as Instrument No. 0003792 in Book 20050525 Page  of Official Records of Clark County, Nevada;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS: 2380 Performance Dr, TX2-985-07-03, Richardson, TX  75082, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

BAC HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS SERVICING LP

BY: _____
        Angela Nava        , Assistant Secretary

State of: Texas                    )
County of: Dallas                  )
On 9-8-09 before me ANGELA SERATO , personally appeared
    Angela Nava        Assistant Secretary , know to me (or proved to me on the
oath of _____ or through _____ ) to be the person whose name is
subscribed to the foregoing instrument and acknowledged to me that he/she executed the same
for the purposes and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

ANGELA SERATO
My Commission Expires
July 27, 2013

EXHIBIT "F"

| Name |
| Bar Code # |
| Address |
| Phone Number |

RECEIVED
AND FILED

Jun 25  2 19 PM '10

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:  **Joseph R Esquivel, Jr.**
**Lori Esquivel**

Case #    09-29326-bam
Chapter   **7**
Trustee   **Yvette Weinstein**

Debtor(s)

## AMENDMENT COVER SHEET

### Amendment(s) to the following are transmitted herewith. Check all that apply.

( )   Petition (must be signed by debtor *and* attorney for debtor per Fed. R. Bankr. P. 9011)

( x )  Summary of Schedules

)   ( Schedule A - Real Property

()   Schedule B - Personal Property

( )   Schedule C - Property Claimed as Exempt

( x )  Schedule D, E, or F, and/or Matrix, and/or List of Creditors or Equity Holders

    (x )   Add/delete creditor(s), change amount or classification of debt - **$26.00 fee required**

    ( )   Add/change address of already listed creditor, add name/address of attorney for already listed creditor,
    amend petition, attach new petition on converted case, supply missing document(s) - **no fee**

* Must provide diskette and comply with Local Rule 1007 if add/delete creditor or add/change address of already listed creditor

( )   Schedule G - Schedule of Executory Contracts & Unexpired Leases

    Schedule H - Codebtors

    Schedule I - Current Income of Individual Debtor(s)

( )   Schedule J - Current Expenditures of Individual Debtor(s)

( )   Statement of Financial Affairs

### Declaration of Debtor

**I (We) declare under penalty of perjury that the information set forth in the amendment(s)
attached hereto is (are) true and correct to the best of my (our) information and belief.**

Joseph R Esquivel, Jr.
**Debtor's Signature**
Date: **March 17, 2010**

Lori Esquivel
**Joint Debtor's Signature**
Date: **March 17, 2010**

#196286

$26

(Revised 4/19/04)

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
### District of Nevada

In re    **Joseph R Esquivel, Jr.,**
         **Lori Esquivel**

Case No. _09-29326-bam_

Debtors

Chapter _____7_____

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 157,000.00 | | |
| B - Personal Property | Yes | 3 | 12,030.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 11,182.00 | |
| E - Creditors Holding Unsecured Priority Claims  (Total of Claims on Schedule E) | Yes | 3 | | 200,334.02 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 3 | | 351,087.82 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 2,200.00 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | 0.00 |
| Total Number of Sheets of ALL Schedules | | 16 | | | |
| Total Assets | | | 169,030.00 | | |
| Total Liabilities | | | | 562,603.84 | |

Form 6 - Statistical Summary (12/07)

# United States Bankruptcy Court
## District of Nevada

| In re | Joseph R Esquivel, Jr., Lori Esquivel | | Case No. | 09-29326-bam |
| | | Debtors | Chapter | 7 |

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

This information is for statistical purposes only under 28 U.S.C. § 159.

Summarize the following types of liabilities, as reported in the Schedules, and total them.

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | 0.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | 0.00 |
| Student Loan Obligations (from Schedule F) | 0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | 0.00 |
| TOTAL | 0.00 |

State the following:

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | 2,200.00 |
| Average Expenses (from Schedule J, Line 18) | 0.00 |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | 0.00 |

State the following:

| | | | |
|---|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | | 3,165.00 |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | 29,156.90 | | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | | 171,177.12 |
| 4. Total from Schedule F | | | 351,087.82 |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | | 525,429.94 |

B6D (Official Form 6D) (12/07)

In re  **Joseph R Esquivel, Jr.,**  Case No. _09-29326-bam_
      **Lori Esquivel**

                                             Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. 91237170001 | | | 8/01/05 | | | | | |
| **Ibew Plus Credit Union** 4318 E Bonanza Rd Las Vegas, NV 89110 | C | | Vehicle financing | | | | | |
| | | | Value $       **6,200.00** | | | | 9,365.00 | 3,165.00 |
| Account No. x0060 | | | 10/01/03 | | | | | |
| **Wells Fargo** PO Box 60510 Los Angeles, CA 90060 | C | | Vehicle financing | | | | | |
| | | | Value $       **2,500.00** | | | | 1,817.00 | 0.00 |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |

| | | |
|---|---|---|
| Subtotal (Total of this page) | 11,182.00 | 3,165.00 |
| Total (Report on Summary of Schedules) | 11,182.00 | 3,165.00 |

_0_   continuation sheets attached

B6F (Official Form 6F) (12/07)

In re    **Joseph R Esquivel, Jr.,**
       **Lori Esquivel**

Case No. 09-29326 - bam

                     Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Services | | | | |
| A-1 Lawn Maintenance 308 S Lorenzi St Las Vegas, NV 89107 | C | | | | | | 2,320.00 |
| Account No. xxxxxxxx0199 | | | 8/01/05 | | | | |
| Bank of America 4161 Piedmont Parkway Greensboro, NC 27410 | C | | Bank of America | | | | 83,685.00 |
| Account No. 1695 | | | 6/1/05 | | | | |
| Citi PO Box 6077 Sioux Falls, SD 57117 | C | | Credit card purchases | | | | 10,000.00 |
| Account No. xxxx5374 | | | 5/01/2005 | | | | |
| Countrywide Home Lending Attn: Bankruptcy SV-314B PO Box 5170 Oxnard, CA 93032 | C | | Countrywide Home Lending | | | | 194,893.00 |
| | | | | | | Subtotal (Total of this page) | 290,898.00 |

  **2**   continuation sheets attached

B6F (Official Form 6F) (12/07) - Cont.

In re     **Joseph R Esquivel, Jr.,**
        **Lori Esquivel**
                                Debtors

Case No.   *09 - 29326 - bam*

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxx xx2972<br><br>**Dielco Crane Services**<br>5454 S. Arville<br>Las Vegas, NV 89118 | X | H | 02/11/2010<br>**Crane services** | | | | 2,800.48 |
| Account No. xxxxxxxx7026<br><br>**Discover Fin Svcs Llc**<br>PO Box 15316<br>Wilmington, DE 19850 | C | | 12/02/02<br>**Credit card** | | | | 9,038.00 |
| Account No. xxxxxxxx xxxu 104<br><br>**Dunn Edwards Paint**<br>4885 E. 52nd Place<br>Los Angeles, CA 90058 | C | | 6/2005<br>**Paint** | | | | 22,145.84 |
| Account No. xxx6861<br><br>**Finanical Credit Svcs**<br>611 Druid Rd E Ste 715<br>Clearwater, FL 33756 | | H | 1/01/08<br>**Collerction-Attorney Morton Plant Hospital** | | | | 41.00 |
| Account No. xxxx-xxxx-xxxx-7236<br><br>**Hsbc Bank**<br>Attn: Bankruptcy<br>PO Box 5253<br>Carol Stream, IL 60197 | | H | 7/01/04<br>**Credit card** | | | | 570.00 |

Sheet no. __1__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

34,595.32

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re    **Joseph R Esquivel, Jr.,**
         **Lori Esquivel**

Case No. 09 - 29 326 - bam

Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xx9440<br><br>**NES Rentals**<br>P.O. Box 8500-1226<br>Philadelphia, PA 19178-1226 | C | | 6/01/07<br>Equipment Rental | | | | 3,500.00 |
| Account No.<br><br>**Orchard Bank**<br>PO Box 19360<br>Portland, OR 97290-0360 | C | | Orchard Bank | | | | 300.00 |
| Account No. xxxxxxxxxxxx0257<br><br>**Rickenbacker Group**<br>7568 Mortery St<br>Gilroy, CA 95021 | | H | 11/01/07<br>Collection Attorney Quality Towing | | | | 2,307.00 |
| Account No.<br><br>**Thomas E. Crowe**<br>7381 West Charleston<br>Suite 110<br>Las Vegas, NV 89117 | C | | 02/26/2010<br>legal services | | | | 502.50 |
| Account No. xxxxxxxxxx7263<br><br>**Wells Fargo Bank**<br>3300 W Sahara Ave<br>Las Vegas, NV 89102 | C | | 5/01/02<br>Credit Card | | | | 18,985.00 |

Sheet no. __2__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | | |
|---|---|---|
| Subtotal<br>(Total of this page) | | 25,594.50 |
| Total<br>(Report on Summary of Schedules) | | 351,087.82 |

EXHIBIT "G"

B18 (Official Form 18) (12/07)

# United States Bankruptcy Court

### District of Nevada
### Case No. 09-29326-bam
### Chapter 7

**In re** Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):

JOSEPH R ESQUIVEL JR.                LORI ESQUIVEL
6940 SURREY CT                    6940 SURREY CT
LAS VEGAS, NV 89145            LAS VEGAS, NV 89145

Social Security / Individual Taxpayer ID No.:
  xxx–xx–6333                        xxx–xx–7754

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

Dated: 9/27/10                          BY THE COURT

                                         *Mary A. Schott*

                                         Mary A. Schott
                                         Clerk of the Bankruptcy Court

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**

EXHIBIT "H"



Inst #: 201010150001860
Fees: $15.00
N/C Fee: $25.00
10/15/2010 12:13:21 PM
Receipt #: 541797
Requestor:
GREGORY WILDE
Recorded By: ANI   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

**APN#**   138-34-610-006

11-digit parcel number may be obtained at:
http://redrock.co.clark.nv.us/assrrealprop/ownr.aspx

Assignment of Deed of Trust

**Type of Document**
(Example:  Declaration of Homestead, Quit Claim Deed, etc.)

**Recording Requested by:**

Wilde & Associates

**Return To:**

**Name**  Gregory Wilde, Esq.

**Address**  212 S Jones Blvd

**City/State/Zip**  Las Vegas, NV 89107

This page added to provide additional information required by NRS 111.312 Section 1-2
(An additional recording fee of $1.00 will apply)

This cover page must be typed or printed clearly in black ink only.

CS 02/07

WHEN RECORDED MAIL TO:

**TIFFANY & BOSCO, P.A.**
**Michael A. Bosco, Jr.**
2525 East Camelback Road, Suite 300
Phoenix, AZ  85016

## ASSIGNMENT OF DEED OF TRUST

| T & B No.: 09-77956 | Parcel No. 138-34-610-006 |
| --- | --- |

For Value Received, the undersigned corporation hereby grants, assigns and transfers to **BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P.** at the address of 7105 Corporate Drive Mail Stop PTX-209, Plano TX 75024 all beneficial interest under that certain Deed of Trust dated **May 3, 2005** executed by **Lori Herda, a married woman as her sole and separate property** Trustor, **CTC Real Estate Services** Trustee, **Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.**, as Beneficiary; and recorded on **05/25/05** as Recording No./Book-Page **200505250003792** of Official Records of **Clark** County, NV and legally describing the trust property as:

LOT 6 IN BLOCK 12 OF CHARLESTON RAINBOW UNIT 7B, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE 51 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.  ASSESSOR'S PARCEL NO: 138-34-610-006

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust. Hereby made effective on:
Date :     JUN 1 5 2010

**Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.**

By : _____

Its: _____
       Nichole Clavadetscher
       Certifying Officer

STATE OF  _CALIFORNIA_         )
                                              )ss.
COUNTY OF  _VENTURA_          )

JON SECRIST
Commission # 1683790
Notary Public - California
Ventura County
My Comm. Expires Jul 24, 2010

On this _15th_ day of _JUNE_____, 20_10_, before me, the undersigned, a Notary Public for said State, personally    appeared    **Nichole Clavadetscher**_____    known    to    me    to    be    the _____CERTIFYING  OFFICER_____ of the above corporation, and acknowledge execution of the above instrument on behalf of the corporation.

My Commission Expires: 7-24-2010

_____
Notary Public

EXHIBIT "I"

Inst #: 201201130002616
Fees: $18.00
N/C Fee: $0.00
01/13/2012 02:52:20 PM
Receipt #: 1036241
Requestor:
CORELOGIC
Recorded By: STN   Pgs: 2
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

Recording Requested By:
**Bank of America**
Prepared By: Aida Duenas
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

DocID# 5309713537420156
Tax ID: 138-34-610-006
Property Address:
6940 Surrey Court
Las Vegas, NV 89145-5224
NV0-ADT 16831754    1/11/2012

This space for Recorder's use

MIN #: 1000157-0005020090-2          MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP whose address is 13150 WORLD GATE DR, HERNDON, VA 20170 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:       **COUNTRYWIDE HOME LOANS, INC.**
Made By:               **LORI HERDA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**
Trustee:               **CTC REAL ESTATE SERVICES**
Date of Deed of Trust: 5/3/2005       Original Loan Amount: $205,000.00

Recorded in Clark County, NV on: 5/25/2005, book N/A, page N/A and instrument number 20050525-0003792

I the undersigned hereby affirm that this document submitted for recording does not contain the social security number of any person or persons.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

1-11-12

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _Alice Ror_

Alice Rowe Assistant Secretary

State of California
County of Ventura

On __JAN 1 1 2012__  before me, _____George A. Pinedo_____, Notary Public, personally appeared
Alice Rowe
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

GEORGE A. PINEDO
COMM. #1853836
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires June 14, 2013

Notary Public: _____George A. Pinedo_____          (Seal)
My Commission Expires: June 14, 2013

DocID#    5309713537420156

EXHIBIT "J"

Inst #: 201305240005502
Fees: $18.00
N/C Fee: $0.00
05/24/2013 05:52:31 PM
Receipt #: 1629951
Requestor:
CORELOGIC
Recorded By: STN   Pgs: 2
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

Recording Requested By:
**Bank of America**
Prepared By: Veronica Coria

When recorded mail to:
CoreLogic
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

DocID# 1379713537434947
Tax ID: 138-34-610-006
Property Address:
**6940 Surrey Court**
**Las Vegas, NV 89145-5224**
NV0-ADT  24995587   5/14/2013  GT0430E

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **GREEN TREE SERVICING LLC** whose address is **7360 S. KYRENE ROAD, TEMPE, AZ 85283** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:         **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.**

Made By:                 **LORI HERDA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

Trustee:                 **CTC REAL ESTATE SERVICES**

Date of Deed of Trust: 5/3/2005         Original Loan Amount: **$205,000.00**

Recorded in **Clark** County, NV on: 5/25/2005, book N/A, page N/A and instrument number **20050525-0003792**

I the undersigned hereby affirm that this document submitted for recording does not contain the social security number of any person or persons.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
__MAY 16 2013__

Bank of America, N.A.

By: _____
    Martha R. Gallardo                    ,
    Assistant Vice President

State of **California**
County of _Los Angeles_

On _MAY 1 6 2013_ before me, _____**C. Wilson**_____, Notary Public, personally appeared
_____**Martha R. Gallardo**_____

, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_C. Wilson_

Notary Public: _____**C. Wilson**_____                    (Seal)
My Commission Expires: ____**July 2, 2015**____

C. WILSON
Commission # 1942970
Notary Public - California
Riverside County
My Comm. Expires Jul 2, 2015

DocID#        1379713537434947

EXHIBIT "K"

APN 138-34-610-006

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

TRUSTEE CORPS
3571 Red Rock St., Ste B
Las Vegas, NV 89103

Inst #: 20140707-0000944
Fees: $223.00
N/C Fee: $25.00
07/07/2014 12:48:00 PM
Receipt #: 2079541
Requestor:
HARMONY TITLE AGENCY
Recorded By: COJ   Pgs: 7
DEBBIE CONWAY
CLARK COUNTY RECORDER

---

TS No. NV05000206-14-1                                                        TO No. 97102658
Commonly known as: 6940 SURREY COURT, LAS VEGAS, NV 89145

## NOTICE OF BREACH AND DEFAULT AND OF ELECTION TO CAUSE SALE
## OF REAL PROPERTY UNDER DEED OF TRUST

NOTICE IS HEREBY GIVEN THAT: **MTC Financial Inc. dba Trustee Corps** is either the original Trustee, the duly appointed substituted Trustee, or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated as of May 3, 2005, executed by LORI HERDA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for COUNTRYWIDE HOME LOANS, INC. as original Beneficiary, recorded May 25, 2005 as Instrument No. 20050525-0003792 of official records in the Office of the County Recorder of Clark County, Nevada; and that

The Deed of Trust secures the payment of and the performance of certain obligations, including, but not limited to, the obligations set forth in that certain Promissory Note with a face amount of $205,000.00 (together with any modifications thereto the "Note"); and that

A breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the Trustor has failed to perform obligations pursuant to or under the Note and/or Deed of Trust, specifically: failed to pay payments which became due July 1, 2009 AND ALL SUBSEQUENT INSTALLMENTS, ALONG WITH LATE CHARGES, PLUS FORECLOSURE COSTS AND LEGAL FEES. PLUS ALL OF THE TERMS AND CONDITIONS AS PER THE DEED OF TRUST, PROMISSORY NOTE AND RELATED LOAN DOCUMENTS.

That by reason thereof the present Beneficiary under such Deed of Trust has executed and delivered to said duly appointed Trustee a written Declaration of Default and Demand for Sale and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

## NOTICE

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed of Trust above described. Section NRS 107.080 permits certain defaults to be cured upon the payment of the amounts required by that statutory section without requiring payment of that portion of principal and interest which would not be due had no default occurred. Where reinstatement is possible, if the default is not cured within the statutory period set forth in Section NRS 107.080, the right of reinstatement will terminate and the property may thereafter be sold. The Trustor may have the right to bring a court action to assert the nonexistence of a default or any other defense of Trustor to acceleration and Sale.

To determine if reinstatement is possible and the amount, if any, to cure the default, contact:

**GREEN TREE SERVICING LLC**
c/o TRUSTEE CORPS
3571 Red Rock St., Ste B
Las Vegas, NV 89103
Phone No: 949-252-8300    TS No: NV05000206-14-1

Dated: July 3, 2014                    MTC Financial Inc. dba Trustee Corps, as Duly Appointed
                                        Successor Trustee

                                        By: Phally Eng, Authorized Signatory

State of NEVADA
County of CLARK

This instrument was acknowledged before me on ___July 7___,
2014, by PHALLY ENG

_____
Notary Public Signature

Christina Rourke
Printed Name

My Commission Expires: ___5/3/17___

CHRISTINA ROURKE
Notary Public-State of Nevada
APPT. NO. 0665241
My Appt. Expires May 03, 2017

Trustee Corps may be acting as a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

To the extent your original obligation was discharged, or is subject to an automatic stay of
bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or
informational purposes only and does not constitute an attempt to collect a debt or to impose
personal liability for such obligation.  However, a secured party retains rights under its security
instrument, including the right to foreclose its lien.

## AFFIDAVIT OF AUTHORITY TO EXERCISE THE
## POWER OF SALE

Property Owners:

LORI HERDA

Property Address:

6940 SURREY COURT
LAS VEGAS, NV 89145

Trustee Address:

17100 Gillette Ave
Irvine, CA 92614

Deed of Trust Document Instrument Number:

20050525-0003792

STATE OF ARIZONA    )
                         ) ss:
COUNTY OF MARICOPA   )

     The Affiant, MIGNONNE DAVIS, based on personal knowledge, which the Affiant acquired through a review of public records and business records kept in the regular course of business of the beneficiary, the successor in interest of the beneficiary, or the servicer of the obligation or debt secured by the Deed of Trust, and under penalty of perjury attests to the following information, as required by NRS 107.080(2)(c):

1.    I am the authorized representative of the beneficiary or trustee, of the Deed of Trust described in the notice of default and election to sell to which this affidavit is attached ("Deed of Trust").

2.    I have personal knowledge of Green Tree Servicing LLC's procedures for creating and maintaining business records. Such business records are made at or near the time of the occurrence of the matters set forth therein by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; are kept by Green Tree Servicing LLC in the course of regularly conducted business activity; and it is the regular practice of Green Tree Servicing LLC to make such records.

3.    I have reviewed certain business records of Green Tree Servicing LLC concerning the Account, Note and Deed of Trust, referenced below, all as reflected by the records maintained by Green Tree Servicing LLC as they have been kept in the course of regularly conducted business activity, and it was the regular practice of that business activity to make or maintain such records at or near the time by, or from information transmitted by, persons with knowledge. The information in this affidavit is based on those business records, which meet the standards set forth in NRS 51.135.

TS No: NV05000206-14                 1               APN: 138-34-610-006

4.   The full name and business address of the current trustee or the current trustee's representative or assignee is:

| | 17100 Gillette Ave<br>Irvine, CA 92614 |
|---|---|
| MTC Financial Inc. dba Trustee Corps | |
| **Full Name** | Street, City, State, Zip |

The full name and business address of the current holder of the note secured by the Deed of Trust is:

| | 600 Landmark Towers<br>345 Saint Peter Street<br>St. Paul, MN 55102 |
|---|---|
| **GREEN TREE SERVICING LLC (2)** | |
| **Full Name** | Street, City, State, Zip |

The full name and business address of the current beneficiary of record of the Deed of Trust is:

| | 600 Landmark Towers<br>345 Saint Peter Street<br>St. Paul, MN 55102 |
|---|---|
| **GREEN TREE SERVICING LLC (2)** | |
| **Full Name** | Street, City, State, Zip |

The full name and business address of the current servicer of the obligation or debt secured by the Deed of Trust is:

| | 600 Landmark Towers<br>345 Saint Peter Street<br>St. Paul, MN 55102 |
|---|---|
| **GREEN TREE SERVICING LLC** | |
| **Full Name** | Street, City, State, Zip |

5.   The beneficiary, successor in interest of the beneficiary, or trustee of the Deed of Trust has actual or constructive possession of the note secured by the Deed of Trust or the beneficiary, its successor in interest, or the trustee is entitled to enforce the obligation or debt secured by the Deed of Trust.

6.   The beneficiary, its successor in interest, the servicer of the obligation or debt secured by the Deed of Trust, the trustee or an attorney representing any of those persons/entities has sent the obligor or borrower of the obligation or debt secured by the Deed of Trust a written statement of:

a.   The amount of payment required to make good the deficiency in performance or payment, avoid the exercise of the power of sale and reinstate the terms and conditions of the underlying obligation or debt existing before the deficiency in performance or payment, as of the date of the statement;

b.   The amount in default;

c.   The principal amount of the obligation or debt secured by the Deed of Trust;

d.   The amount of accrued interest and late charges;

e.   A good faith estimate of all fees imposed in connection with the power of sale; and

      f.     Contact information for obtaining the most current amounts due and the local or toll-free telephone number that the obligor or borrower of the obligation or debt may call to receive the most current amounts due and a recitation of the information contained in this affidavit.

7.    The obligor or borrower(s) of the obligation of debt may call (800) 201-1622 to explore loss mitigation alternatives or to receive the most current amounts due and a recitation of the information contained in this Affidavit.

8.    Information regarding the instrument(s) that conveyed the interest of each beneficiary, and is based on:

      a.    the direct, personal knowledge of the Affiant, which the Affiant acquired independently, or

      b.    by a review of the business records of the beneficiary, the successor in interest of the beneficiary or the servicer of the obligation or debt secured by the Deed of Trust (which meet the standards set forth in NRS 51.135),

      c.    by a review of information contained in the records of the recorder of the county in which the property is located, or

      d.    by a review of the title guaranty or title insurance issued by a title insurer or title agent authorized to do business in Nevada pursuant to chapter 692A of NRS:

| Date | Recordation Number | Name of Assignee |
|---|---|---|
| 09/14/2009 | 200909140003882 | BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP |
| 10/15/2010 | 201010150001860 | BAC HOME LOANS SERVICING, L.P. FKA COUNTRYWIDE HOME LOANS SERVICING, L.P. |
| 01/13/2012 | 201201130002616 | BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, L.P. FKA COUNTRYWIDE HOME LOANS SERVICING, L.P. |
| 05/24/2013 | 201305240005502 | GREEN TREE SERVICING LLC |

9.    The beneficiary, its successor in interest or the servicer of the obligation or debt secured by the Deed of Trust has instructed the trustee to exercise the power of sale with respect to the property.

10.    Following is the true and correct signature of the Affiant:


Dated: 6-27-14                        GREEN TREE SERVICING LLC

                                      By: Mignonne Davis, Foreclosure Supervisor

STATE OF ARIZONA
COUNTY OF MARICOPA

The  foregoing  instrument  was  acknowledged  before  me  this  27  day  of
June                        , 2014  by  MIGNONNE  DAVIS,  FORECLOSURE
SUPERVISOR  of  Green  Tree  Servicing  LLC,  a  Limited  Liability  Company,  on  behalf  of  the
Company.


Notary for State of Arizona
# 317508
Commission expires:  10-28-17

Cody C Matthieu
Notary Public
Maricopa County, Arizona
My Comm. Expires 10-28-17


TS No: NV05000206-14                    4                    APN: 138-34-610-006

# NEVADA DECLARATION OF COMPLIANCE
## (NRS 107 §11(6))

Borrower(s):            Lori Herda
Mortgage Servicer:      Greentree Servicing LLC
Property Address:       6940 SURREY CT
                        LAS VEGAS NV 89145

T.S No:

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☐ The mortgage servicer has contacted the Borrower to "assess the borrower's financial situation, explore options for the borrower to avoid foreclosure, advise the borrower that he or she has the right to request a subsequent meeting and provide the toll free HUD number to the borrower to find a local housing counselor". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ Despite the exercise of the due diligence requirements the mortgage servicer has been unable to contact the borrower to "assess the borrower's financial situation, explore options for the borrower to avoid foreclosure and provide the toll free HUD number to the borrower to find a local housing counselor". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. No contact was required by the mortgage servicer because:

   a. ☐ The requirements of NRS §107 do not apply as the individual(s) do/did not meet the definition of "borrower".
   b. X  The requirements of NRS §107 do not apply as the because the above-referenced loan did not meet the definition of "residential mortgage loan" OR, if the account is a "residential mortgage loan", it is NOT the most senior "residential mortgage loan" encumbering the above-referenced property.
   c. ☐        The requirements of NRS §107 do not apply as the default event which precipitated this foreclosure was not the failure to make a payment required by a residential mortgage loan.

4. In light of the foregoing, the mortgage servicer authorizes the trustee to submit the attached Notice of Default to be recorded as all pre-foreclosures notices required by N.R.S. § 107.080(2)(c)(3) and, if applicable, N.R.S. § 107 (SB 321/HOBR Sec. 10(1) were timely sent per statute.

I certify and represent that this mortgage servicer's declaration is accurate, complete and based upon competent and reliable evidence, including my review of the mortgage servicer's business records.

Date:  May 9, 2014                    Greentree Servicing LLC
                                      _____ ,
_____              Mortgage Servicer

                                      By: Catherine Mann
                                          Collection Manager

**ATTACHMENT TO AFFIDAVIT OF AUTHORITY TO EXERCISE THE POWER OF SALE**

EXHIBIT "L"



## Procedures Manual

Release 19.0
June 14, 2010

# Transfer of Beneficial Rights to Member Investors

## Overview

Although MERS tracks changes in ownership of the beneficial rights for loans registered on the MERS® System, MERS cannot transfer the beneficial rights to the debt. The debt can only be transferred by properly endorsing the promissory note to the transferee. As a MERS Member you have two options for registering a transfer of beneficial rights to another Member: Option 1 and Option 2. The determination of whether Option 1 or Option 2 is used is based on the Membership Profile of the purchasing investor.

### Option 1



In an Option 1 transfer, the Investor transfers beneficial rights on a system other than MERS (example: MORNET) and that system then initiates the MERS transaction.

Loans in an Option 1 batch that have not been registered are automatically reprocessed ("cycled") until the loans have been registered, up to ten (10) calendar days from the Transfer Date. Option 1 investors receive notification when MIN cycling begins through the *Transfer of Beneficial Rights Reject Report.*

If you include MINs that are not registered in your agency transmission (e.g. MORNET), you will receive an abbreviated version of the *Transfer of Beneficial Rights Reject Report* listing these unregistered MINs. It is your responsibility to register these MINs immediately, entering your MERS Org ID in the Investor field. If you register them after the 10 day cycling process is over, you must name the Agency in the Investor field.

An Option 1 Transfer of Beneficial Rights will replace any Option 2 investor on the loan. The investor that was removed during the Option 1 process is notified of its removal by the *Investor Removed by Option 1 TOB report.* Additionally, Interim Funder and Warehouse Gestation Lender interests are released automatically in an Option 1 beneficial rights transfer. No confirmations are required for Option 1 transfers.



# TERMS AND CONDITIONS

1. MERS, which shall include MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc., and the Member shall abide by these Terms and Conditions, the Rules and Procedures (collectively, the "Governing Documents"), copies of which will be supplied upon request.   The Governing Documents shall be a part of the terms and conditions of every transaction that the Member may make or have with MERS or the MERS® System either directly or through a third party.  The Member shall be bound by any amendment to any of the Governing Documents.

2. The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System.  MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time.  MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.  MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties.  References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.

3. MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes.  In the absence of contrary instructions from the note holder, MERS shall comply with instructions from the Servicer shown on the MERS® System in accordance with the Rules and Procedures of MERS.

4. No rights or obligations of the Member with respect to any data or information supplied to MERS by or on behalf of the Member shall be altered or affected in any manner by the provision of such data or information to MERS (except as otherwise specifically provided in these Terms and Conditions or the Rules of Membership).

5. If the Member uses MERS as Original Mortgagee (MOM) on the security instrument, the loan must be registered on the MERS® System within 10 days of the Note Date.

6. MERS and the Member agree that:  (i) the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or supersede any agreement between or among the Members having interests in mortgage loans registered on the MERS® System.

7. If the Member has a third-party register loans (the "Registrar") on the MERS® System on behalf of the Member, the Registrar shall not be deemed an agent of MERS.  The Registrar shall be solely an agent for the Member, and MERS is only giving consent to the Member to use a Registrar to enter information on the MERS® System on behalf of the Member.  The Member agrees that MERS is not liable to the Member for any errors and omissions, negligence, breach of confidentiality, breach of the Rules and Procedures, or willful misconduct of the Registrar, or any employee, director, officer, agent or affiliate of the Registrar in performing its services to the Member.

8. The Member shall promptly pay to MERS the compensation due it for transactions registered on the MERS® System and other services rendered to the Member based on the then current MERS fee schedules, which may change from time to time.  The Member shall promptly pay to MERS any interest and penalties on delinquent fee payments at the rate set by MERS from time to time.  MERS shall have the authority to impose reasonable penalties and fines on Members for breach of the Governing Documents, and the Member shall promptly pay such fines in accordance with the terms of their imposition.

9. MERS shall indemnify and hold harmless the Member, and any employee, director, officer, agent or affiliate of the Member   ("Member Party"), from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgments, and any other costs, fees and expenses ("indemnified Payments") that the Member Party may sustain directly from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, breach of the Rules and Procedures, or willful misconduct of MERS, or any employee, director, officer, agent or affiliate of MERS ("MERS Indemnified Claim").  Notwithstanding the foregoing, MERS shall not be liable or responsible under the terms of this Paragraph for any losses or claims

resulting from the actions or omissions of any person other than an employee, director, officer (who is also an employee of MERS), agent or affiliate of MERS.

The Member shall indemnify and hold harmless MERS, and any employee, director, officer, agent or affiliate of MERS ("MERS Party"), for any Indemnified Payments which do not result from a MERS Indemnified Claim and which such MERS Party incurs (i) from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, Rules and Procedures, or willful misconduct of a Member Party, (ii) with respect to a transaction on the MERS® System initiated by such Member, or (iii) as a result of compliance by MERS with instructions given by the Member, or its designee, as beneficial owner, servicer or secured party shown on the MERS® System ("Member Indemnified Claim").

MERS shall promptly notify the Member if a claim is made by a third party against either MERS or the Member with respect to any mortgage loan registered on the MERS® System in which the Member is shown on the MERS® System as beneficial owner, servicer or secured party in accordance with the Rules and Procedures.  The Member shall promptly notify MERS if a claim is made against the Member that may be subject to the indemnification provisions of this Paragraph.

The obligations of MERS and the Member under this Paragraph shall survive the termination of the Member's use of the MERS® System.

10. MERS and the Member shall maintain appropriate insurance coverage that shall include an errors and omissions insurance policy and a fidelity bond.  MERS shall not be required to maintain coverage for persons who may be appointed at the request of the Member as certifying officers of MERS.  The Member's policies shall protect and insure MERS against losses in connection with the release or satisfaction of a mortgage loan without having obtained payment in full of the indebtedness secured thereby.  Upon request, MERS or the Member shall cause to be delivered to the other a certified true copy of such errors and omissions insurance policy and fidelity bond.

In the event of any loss of principal or interest on a mortgage loan or any Indemnified Payments for which reimbursement is received from a fidelity bond or any errors and omissions insurance policy or other insurance policy, the proceeds from any such bond or insurance shall be held in trust for and be promptly paid to the Member who is shown as the servicer on the MERS® System on behalf of the beneficial owner unless otherwise requested by the beneficial owner.

11. Any notice or other communication which is required or permitted to be given or made to MERS pursuant to any provision of the Governing Documents shall be given or made in writing and shall be sent by nationally recognized overnight courier, or facsimile followed by delivery of the original via first class mail, addressed as follows: MERS, Corporate Secretary, 1818 Library Street, Suite 300, Reston, Virginia, 20190.

12. These Terms and Conditions and all transactions effected by the Member with MERS shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its choice of law provisions.

13. Neither the Member nor MERS shall institute a proceeding before any tribunal to resolve any controversy or claim arising out of or relating to these Terms and Conditions, Rules and Procedures, or the breach, termination or invalidity thereof (a "Dispute), before such party has sought to resolve the Dispute through direct negotiation with the other party.  If the Dispute is not resolved within thirty (30) days after a written demand for direct negotiation, the parties shall attempt to resolve the Dispute through mediation.  If the parties do not promptly agree on a mediator, either party may request the then chief judge of the Circuit Court of Fairfax County, Virginia to appoint a mediator. All mediation proceedings hereunder shall be held in Washington, D.C.  If the mediator is unable to facilitate a settlement of the Dispute within a reasonable period of time, as determined by the mediator, the mediator shall issue a written statement to the parties to that effect and the aggrieved party may then seek relief in accordance with the arbitration provisions of this Paragraph.  The fees and expenses of the mediator shall be paid by the party initiating the Dispute.

In the event that the Member and MERS are not able to resolve a Dispute in accordance with the mediation provisions of this Paragraph, such Dispute shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof; provided, however, that the place of arbitration shall be Washington, DC, and fees and expenses for the arbitration proceedings shall be paid by the party initiating arbitration.